PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**April 24, 2007**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | Case No. 04-43238 |
| RICHARD ALAN DEMASKEY and KIMBERLY A. DEMASKEY, | |
| Debtors. | |
| JAMES P. SIMS, on behalf of Wholesale Information Network, Inc., | Adversary No. A04-4123 |
| Plaintiff, | **MEMORANDUM DECISION** |
| v. | |
| RICHARD ALAN DEMASKEY and KIMBERLY A. DEMASKEY, | **NOT FOR PUBLICATION** |
| Defendants. | |

This matter came on for an evidentiary hearing on April 4, 2007, concerning the extent to which a claim belonging to Wholesale Information Network, Inc. (Plaintiff) in the bankruptcy case of Richard Alan Demaskey and Kimberly A. Demaskey (Debtors/Defendants) was compromised by its purchase of stock from the Chapter 7 Trustee (Trustee). Based on the evidence, testimony and arguments presented at the evidentiary hearing, and considering the

MEMORANDUM DECISION - 1
Case 04-04123-PBS    Doc 52    Filed 04/24/07    Ent. 04/24/07 13:56:29    Pg. 1 of 9

pleadings and exhibits submitted, the Court's findings of fact and conclusions of law are as follows:

## FINDINGS OF FACT

Plaintiff is a California corporation licensed to do business in the State of Washington. James P. Sims (Sims) and Richard Alan Demaskey (Demaskey) were the Plaintiff's sole shareholders. In 1998, Sims and Demaskey signed a Restrictive Stock Transfer Agreement (Stock Agreement). The Stock Agreement restricted the right of the shareholders to sell the Plaintiff's stock. It also provided for the purchase of a shareholder's stock on the happening of certain events.

On February 4, 2002, Sims, on behalf of the Plaintiff, filed a shareholder derivative action against the Defendants in Clark County Superior Court (State Court Lawsuit). Trial was scheduled for April, 2004. On April 1, 2004, the Defendants filed a voluntary Chapter 7 bankruptcy petition staying the State Court Lawsuit.

Sims, on behalf of the Plaintiff, subsequently filed a timely adversary complaint against the Defendants on May 19, 2004. The complaint seeks an order declaring any claim owed by the Defendants to the Plaintiff nondischargeable. The complaint also seeks relief from the stay should the claim be found nondischargeable, and for an order declaring the rights of the parties under the Stock Agreement.

On April 22, 2004, the Plaintiff filed a proof of claim in the Defendants' bankruptcy case for $649,512.82. The basis for the claim is stated as "damages for embezzlement." On September 1, 2005, the Trustee filed Trustee's Motion to Sell Estate's Interest in Stock in Wholesale Information Network, Inc. (Motion to Sell). In the Motion to Sell, the Trustee proposed to sell the Defendants' stock to the Plaintiff for a purchase price of $38,000. The

Trustee's motion was approved without objection or the taking of evidence by the Court on October 26, 2005. On November 16, 2006, the Plaintiff filed an amended proof of claim indicating that it did not desire to participate in any distribution to creditors.

On January 14, 2005, following a motion for summary judgment filed by the Plaintiff, the Court entered an order terminating the automatic stay to allow the Plaintiff's pending State Court Lawsuit to proceed. Once the claim was determined in the State Court Lawsuit, if necessary, the Plaintiff could return to the bankruptcy court for a determination as to whether its claim was dischargeable.

Trial commenced in the State Court Lawsuit on October 30, 2006, and was completed on November 2, 2006. Prior to a decision being rendered, the Defendants apparently raised the issue of whether the Plaintiff's claims were compromised when the Plaintiff purchased the estate's interest in its stock from the Trustee for $38,000. The state court trial judge is refraining from issuing a decision pending a determination by this Court as to the possible effect of the Plaintiff's stock purchase.

On December 5, 2006, the Defendants filed a motion for summary judgment in the adversary proceeding arguing that they were entitled to an order dismissing the pending adversary proceeding on the basis that the Plaintiff's claims were completely compromised. On January 26, 2007, the Court entered an Order Denying Defendants' Motion for Summary Judgment and Setting Status Conference. After a status conference between the parties held on February 7, 2007, the Court set this matter for an evidentiary hearing.

## CONCLUSIONS OF LAW

As a preliminary matter, it is necessary for the Court to rule on two evidentiary objections raised by the Plaintiff. At the evidentiary hearing and in its Post-Hearing

Memorandum, the Plaintiff objected to entry into evidence under Fed. R. Evid. 408, of a letter dated April 7, 2004 (marked as Defendants' Exhibit D-12) and a letter dated October 30, 2006 (marked as Defendants' Exhibit D-11). This rule prohibits use of evidence of a settlement "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408.

Exhibit D-12 is a letter from counsel for the Plaintiff to the Trustee, who is not a party to the State Court Lawsuit or the current adversary proceeding, in response to an apparent request by the Trustee to "provide [him] with certain information to clarify the situation with Wholesale Information Network, Inc." In this case, contrary to what has been argued by the Plaintiff, Exhibit D-12 is not being offered to prove liability, as liability of the Plaintiff was never at issue. Both parties agree that the Plaintiff was not under any requirement to purchase the stock. Nor was the Plaintiff's claim in dispute. Rather, the statements are being used to demonstrate the intent of the Plaintiff and the Trustee to settle the Plaintiff's claim in negotiating a sale of the stock. Admission of the letters for that purpose is not barred under Fed. R. Evid. 408. See, e.g., Cates v. Morgan Portable Bldg. Corp. 780 F.2d 683, 691 (7th Cir. 1985); Marine Midland Bank v. Portnoy, 201 B.R. 685, 691-92 (Bankr. S.D.N.Y. 1996) (settlement statements admissible to show intent).[1]

The same is true of Exhibit D-11, which is a letter from the Trustee to Plaintiff's counsel. In Exhibit D-11, the Trustee requests that the Plaintiff withdraw its proof of claim in accordance with their apparent agreement. In response to this letter, the Plaintiff's proof of claim was, in fact, amended. Liability or the amount of a disputed claim is again not at issue.

---

[1] Although these cases were decided prior to the December 1, 2006 amendment to Fed. R. Evid. 408, the advisory committee's notes indicate that the intent was to "retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim." Fed. R. Evid. 408 advisory committee's notes (2006).

Exhibit D-11 is being introduced to demonstrate only that a "settlement" did occur as stated therein. Such statements between a third party and Plaintiff's counsel are not found to be inadmissible under Fed. R. Evid. 408.

The primary issue before this Court is whether the claims belonging to the Plaintiff were compromised by the purchase of its stock from the Trustee. Both Exhibits D-11 and D-12 support the Defendants' position that a compromise occurred. In Exhibit D-12, Plaintiff's counsel sets forth in detail the parties' respective positions. Plaintiff's claim against the Defendants is stated as $649,105.12, and the Defendants' stock is calculated pursuant to the formula set forth in the Stock Agreement at $719,078.48. Counsel indicates that the difference between the Plaintiff's claim and stock value is $69,973.36, but because under the Stock Agreement the corporation would make payments over time, the number should be discounted for a lump sum payment. Counsel further states that if the parties are able to resolve this matter, "[there] would also be no need for Mr. Sims to except to Mr. DeMaskey's discharge as the matter would be considered resolved." (Ex. D-12 at 4). This last statement leaves little open to interpretation. Counsel unambiguously states that if the Trustee were to accept the difference between its claim and the amount owed on the stock, the Plaintiff would consider the matter resolved. The only inference than can be drawn from such statements is that a settlement was contemplated according to those terms.

Exhibit D-11 is also consistent with a ruling that the parties intended a settlement. In this letter to Plaintiff's counsel, the Trustee states: "As part of our <u>settlement</u> for the purchase of the Stock from the Debtor, your client was to withdraw its Proof of Claim." (Ex. D-11) (emphasis added). In response, the Plaintiff did not object to such characterization or refuse to comply. Instead, the proof of claim was amended. The Trustee's reference to the parties

"settlement" contradicts the Plaintiff's position that the parties merely negotiated the stock price at arms length and not as part of a compromise.

Even if Exhibit D-11 and D-12 were inadmissible, a preponderance of the evidence in this case supports the Defendants' position. The analysis set forth by Plaintiff's counsel in Exhibit D-12, mirrors the testimony provided at the April 4, 2006 evidentiary hearing and in the Trustee's Motion to Sell (admitted into evidence as Ex. D-3 without objection). As required when seeking court approval of the sale of an estate asset pursuant to 11 U.S.C. § 363(b), the Trustee set forth facts in the Motion to Sell supporting the sale price for the stock. The Motion to Sell indicates that under the terms of the Stock Agreement, the Plaintiff has an option to purchase the Defendants' shares and explains the formula for calculating the price Plaintiff would have to pay. According to the Motion to Sell, if the Plaintiff elects to purchase the stock, it is required to pay $751,256.07. The Trustee further states that as the Plaintiff filed a proof of claim for $649,512.82, the Plaintiff "has a huge right of set-off against the price it would have to pay for the stock." (Ex. D-3 ¶ 12). The difference between these two amounts is $101,743.25. To support a discounted price of $38,000, the Trustee states that under the Stock Agreement the price for the shares would be paid over a ten year period, which would require the Trustee to administer the estate for the same period in order to receive the entire purchase price plus interest.

An order incorporating the facts set forth in the Motion to Sell was entered, without objection, on October 26, 2005. The statements contained in the Motion to Sell are consistent with the Defendants' position. The Trustee represents that $38,000 is a fair price for the stock because of the "right of set-off." Such statement is unambiguous.

The undisputed evidence in this case demonstrates that in selling the stock for only $38,000, the Trustee was compromising the Plaintiff's claim for damages as set forth in the April 22, 2004 proof of claim. Although a formal settlement agreement was not executed, nor did the Trustee seek approval of the sale as a compromise under Fed. R. Bankr. P. 9019, this does not change the characterization of what occurred. As recognized by the Ninth Circuit Bankruptcy Appellate Panel in <u>In re Mickey Thompson Entm't Group, Inc.</u>, 292 B.R. 415 (9th Cir. BAP 2003), the line between a sale and a settlement in bankruptcy is often blurred. <u>In re Mickey Thompson</u>, 292 B.R. at 421-22. In bankruptcy, it is not unusual for a trustee in selling an estate asset to simultaneously compromise a claim through a negotiated sales price. This is precisely what occurred in this case. In selling the stock, the Trustee both sold the asset and disposed of the Plaintiff's claim for "damages for embezzlement."

The Plaintiff may be correct that neither setoff nor recoupment apply in this case. This does not, however, change the Court's ruling. What happened in this case is that the Trustee and the Plaintiff negotiated a settlement of their claim through the stock purchase. The Court authorized the settlement when it approved without opposition the Motion to Sell. The claim was subsequently withdrawn, and the Plaintiff relinquished any distribution on its claim. No further basis for disallowing any additional recovery on that claim is needed.

In some aspects the Defendants are correct that common sense dictates this result. It does not make sense that the Trustee would sell an asset for $38,000, allegedly worth over $700,000, unless the sale was part of a settlement. The Plaintiff cannot have it both ways. The Plaintiff admits that it filed the proof of claim in order to hedge their bets. The concern was that the Trustee would sell the stock on the open market to an outsider. In order to maintain control over the stock, the Plaintiff offered to purchase it from the Trustee. The

negotiated price was the difference between the value calculated according to the formula set forth in the Stock Agreement and the proof of claim, with an appropriate discount for a lump sum payment. The benefit to the estate was that the Trustee did not have to go through the process of seeking an outside purchaser, nor would he have to take any further action regarding the filed proof of claim. Although the Trustee had no interest in the adversary proceeding or settling the claims per se, he did have an obligation to examine and take appropriate action on any proof of claim filed.

The sale and corresponding settlement made sense for both the Plaintiff and the estate's creditors. To now allow the Plaintiff to seek payment for these same damages in the adversary proceeding would be inequitable. The Plaintiff received the benefit of purchasing the stock for a fraction of the fair market value. As set forth in the Stock Agreement, in regards to the method for calculating the price of the stock set forth in that agreement: "The parties specifically agree that the value provided herein is substantially less than the fair market value which would otherwise be obtainable by reason of the fact that Corporation would be forced to purchase said property in order to protect the integrity of the entity at a time not advantageous to it." (Stock Agreement, Ex. D-1 ¶ 12.4.3). The Plaintiff was a party to this agreement. The Plaintiff was therefore presumably aware that in paying $38,000 rather than over $700,000, it obtained its stock for a fraction of its value. This price makes sense only if it is viewed as part of a settlement of Plaintiff's other claims. The Plaintiff has therefore been fully compensated for any claim that comprised the proof of claim. The Plaintiff is not entitled to any further recovery related to that claim. To allow further recovery would be to sanction an impermissible double recovery. See, e.g., Westric Battery Co. v. Standard Elec. Co., 482 F.2d 1307, 1317 (10th Cir. 1973) (double or duplicate recoveries are invalid).

It is undisputed that the Plaintiff filed a proof of claim in the Defendants' bankruptcy case for $649,512.82. The basis for the claim is stated as "damages for embezzlement." The Plaintiff admits that the basis for this claim is included in the damages that comprise the non-dischargeability complaint. Although the evidence indicates that the parties did not intend by the sale to settle the adversary proceeding, the weight of the evidence is that the sales price compensated the Plaintiff for those damages covered by the April 22, 2004 proof of claim. The Plaintiff is therefore not entitled to any additional recovery on those damages.

Except as set forth above, this Court is not making a ruling as to the effect of its decision on the pending adversary proceeding or State Court Lawsuit. If for instance, the Plaintiff has claims or damages that were not included in the April 22, 2004 proof of claim, it may have additional remedies and/or damages that could still be recovered in the adversary proceeding.

DATED: April 24, 2007

*Paul B. Snyder*
———————————————
Paul B. Snyder
U.S. Bankruptcy Judge