PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**August 1, 2008**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | Case No. 04-43238 |
| RICHARD ALAN DEMASKEY and KIMBERLY A. DEMASKEY, | |
| Debtors. | |
| JAMES P. SIMS, on behalf of Wholesale Information Network, Inc., | Adversary No. 04-04123 |
| Plaintiff, | **MEMORANDUM DECISION** |
| v. | |
| RICHARD ALAN DEMASKEY and KIMBERLY A. DEMASKEY, | **NOT FOR PUBLICATION** |
| Defendants. | |

This matter came before the Court on a Motion for Summary Judgment Re: Dismissal of Adversary Proceeding filed by Wholesale Information Network, Inc. (Plaintiff). This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.

MEMORANDUM DECISION - 1

# I

# FINDINGS OF FACT

Plaintiff is a California corporation licensed to do business in the State of Washington. James P. Sims (Sims) and Richard Alan DeMaskey (DeMaskey) were the Plaintiff's sole shareholders. In 1998, Sims and DeMaskey signed a Restrictive Stock Transfer Agreement (Stock Agreement), which restricted the right of the shareholders to sell shares of the Plaintiff's stock. It also provided for the purchase of a shareholder's stock on the happening of certain events.

On February 4, 2002, Sims, on behalf of the Plaintiff, filed a shareholder derivative action against Richard and Kimberly DeMaskey (Defendants) in Clark County Superior Court (State Court Lawsuit). On March 15, 2002, the Clark County Superior Court (State Court) entered an order (March 15, 2002 Order) that appointed a receiver and provided in Paragraph 7: "Both shareholders are enjoined from taking any action to divert business or clients or customers from Wholesale Information Network, Inc., or to take any action in competition, present or future, with Wholesale Information Network, Inc."

DeMaskey met Jennifer Blades (Blades) in July, 2002. By January, 2003, they had developed a romantic relationship, and they began living together in the spring of 2004. Prior to 2004, her work experience was limited to retail clothing sales and waitressing. She had no prior experience in the employee background screening industry.

In January, 2004, Blades applied for a Master Business Application with the State of Washington for a business identified as Wholesale Information Network. She stated that she had been advised by DeMaskey's attorney that Wholesale Information Network, Inc. would be dissolving. She intended to give the proprietorship to DeMaskey so that he could have the

company name. On February 1, 2004, DeMaskey emailed himself certain forms utilized by the Plaintiff.

Franchise Profiles, Inc. (Franchise Profiles) is an Ohio corporation whose primary business is a retailer in the employee background screening industry. Its primary focus is on prospective franchisees in the automobile industry. Prior to 2004, it was a customer of the Plaintiff. Blades purchased Franchise Profiles pursuant to an agreement dated March 1, 2004, and established Franchise Profiles, LLC on February 8, 2005. Blades is the sole member and manager.

AAIM and E-Check are companies in the employee background screening industry. AAIM became a customer of the Plaintiff in 1996, and E-Check became a customer in 2003. Both gave the Plaintiff search assignments for employee background screening. Franchise Profiles began serving AAIM by mid-March, 2004, and E-Check during April, 2004. Both companies were acquired as customers of Franchise Profiles through the assistance of DeMaskey.

Up until a corporate meeting in May, 2004, DeMaskey continued as an officer and director of the Plaintiff. His employment with the company was terminated in May, 2004. Between May, 2004, and the summer of 2006, DeMaskey was unemployed and supported financially by Blades.

Trial in the State Court Lawsuit was scheduled for April, 2004. On April 1, 2004, the Defendants filed a voluntary Chapter 7 bankruptcy petition staying the State Court Lawsuit.

Sims, on behalf of the Plaintiff, subsequently filed a timely adversary complaint against the Defendants on May 19, 2004. The complaint seeks an order declaring any claim owed by the Defendants to the Plaintiff nondischargeable. The complaint also requests relief from the

stay should the claim be found nondischargeable, and for an order declaring the rights of the parties under the Stock Agreement.

On April 22, 2004, the Plaintiff filed a proof of claim in the Defendants' bankruptcy case for $649,512.82. The basis for the claim was stated as "damages for embezzlement." On September 1, 2005, the Trustee filed Trustee's Motion to Sell Estate's Interest in Stock in Wholesale Information Network, Inc. (Motion to Sell). In the Motion to Sell, the Trustee proposed to sell the Defendants' stock to the Plaintiff for a purchase price of $38,000. The Trustee's motion was approved without objection or the taking of evidence by the Court on October 26, 2005. On November 16, 2006, the Plaintiff filed an amended proof of claim indicating that it did not desire to participate in any distribution.

On January 14, 2005, following a motion for summary judgment filed by the Plaintiff, this Court entered an order terminating the automatic stay to allow the Plaintiff's pending State Court Lawsuit to proceed. In accordance with this Court's order, once the claim was determined in the State Court Lawsuit, if necessary, the Plaintiff could return to the bankruptcy court for a determination as to whether its claim was dischargeable.

Trial commenced in the State Court Lawsuit on October 30, 2006, and was completed on November 2, 2006. Prior to a decision being rendered, the Defendants raised the issue of whether the Plaintiff's claims were compromised when the Plaintiff purchased the estate's interest in its stock from the Trustee for $38,000. The State Court trial judge refrained from issuing a decision pending a determination by this Court as to the possible effect of the Plaintiff's stock purchase.

On December 5, 2006, the Defendants filed a motion for summary judgment in the adversary proceeding arguing that they were entitled to an order dismissing the pending

adversary proceeding on the basis that the Plaintiff's claims were compromised. Following an evidentiary hearing, the Court entered a Memorandum Decision and Order Limiting Plaintiff's Damages on April 24, 2007 (April 24, 2007 Decision and Order), concluding that the Plaintiff was not entitled to any further recovery in this adversary proceeding for those damages set forth in the proof of claim filed in the Defendants' bankruptcy case on April 22, 2004. The Court further held that:

> Except as set forth above, this Court is not making a ruling as to the effect of its decision on the pending adversary proceeding or State Court Lawsuit. If for instance, the Plaintiff has claims or damages that were not included in the April 22, 2004 proof of claim, it may have additional remedies and/or damages that could still be recovered in the adversary proceeding.

Memorandum Decision at 9.

The State Court entered Findings of Fact and Conclusions of Law in the State Court Lawsuit on April 7, 2008. The State Court concluded that Sims, on behalf of the Plaintiff, should have judgment against DeMaskey in the amount of $92,669.62, for sums DeMaskey misappropriated from the company between January 1, 1996, and December 31, 2001, plus prejudgment interest. The State Court also concluded that it should assess receiver fees against DeMaskey of $53,300, plus prejudgment interest and attorney fees. However, based on this Court's April 24, 2007 Decision and Order, the State Court determined that the Plaintiff should not be entitled to the entry of a judgment for misappropriation and the receiver fees.

The State Court further concluded that DeMaskey breached the State Court's March 15, 2002 Order, by diverting the business of AAIM and E-Check from the Plaintiff to Franchise Profiles and awarded a judgment of $33,245.73. The State Court further ordered the defendants in the State Court Lawsuit to pay the Plaintiff's attorneys fees of $31,923.08. The Court assessed judgments, jointly and severally, against Blades, Franchise Profiles and

Morris. Judgment has not yet been entered against DeMaskey pending a determination of dischargeability by this Court.

The Plaintiff has moved for summary judgment alleging that its claims against the Defendants are nondischargeable under 11 U.S.C. § 523(a)(4), (a)(6) and (a)(7). After oral argument, the Court requested additional briefing from both parties. A supplemental brief was filed by the Plaintiff.

**II**

**CONCLUSIONS OF LAW**

As a preliminary matter, in their response, the Defendants request that Kimberly DeMaskey be dismissed from the adversary proceeding. The State Court did not render findings against Kimberly DeMaskey personally or conclude that judgment should be rendered in Plaintiff's favor against her. As the Plaintiff has not set forth any facts establishing a claim against Kimberly DeMaskey personally or establishing any act on her part that would render such a claim nondischargeable, the Court concludes that Kimberly DeMaskey should be dismissed from this adversary proceeding on proper motion.

At the June 10, 2008 hearing, the Court requested additional briefing from the Plaintiff as to whether any of the amounts sought to be declared nondischargeable related to postpetition claims. A supplemental brief was timely filed by the Plaintiff on June 20, 2008. The Plaintiff clarified that all of the actions related to the claim for diverting funds regarding E-Check occurred postpetition and that, therefore, the portion of the its claim related to E-Check is not subject to discharge. The Plaintiff alleges that the facts related to AAIM have both prepetition and postpetition components. The acts of diversion occurred prepetition and the damages continued and were experienced postpetition. As the acts comprising this claim first

occurred prepetition, the Court agrees that the claims and damages related to AAIM are a prepetition claim and therefore potentially subject to discharge. The portion of the Plaintiff's claim related to AAIM is $26,161.21 and $7,084.52 for E-Check. The Defendants have not disputed this recitation of the facts. The Court concludes that AAIM is a prepetition claim and the E-Check claim arose postpetition.

The Court also requested additional briefing from DeMaskey responding to the nondischargeability claims. No pleadings were submitted by DeMaskey contesting nondischargeability.

The Plaintiff first requests that the Court make a ruling on the issue as to whether the Plaintiff's claims for misappropriation and receiver fees are nondischargeable. The Plaintiff admits that the Court has already ruled that the Plaintiff was fully compensated for these claims in the compromise. The State Court also concluded that the Plaintiff was not entitled to a judgment on these claims based on this Court's April 24, 2007 Decision and Order. The Court is unwilling to give an advisory ruling as to whether these claims are nondischargeable.

The next issue is whether the Plaintiff's claims for diversion of customers and contempt should be excepted from discharge. The Court notes that the only defense raised by DeMaskey is that these claims were also covered by this Court's April 24, 2007 Decision and Order. This Court disagrees. In the Memorandum Decision the Court held that:

> Except as set forth above, this Court is not making a ruling as to the effect of its decision on the pending adversary proceeding or State Court Lawsuit. If for instance, the Plaintiff has claims or damages that were not included in the April 22, 2004 proof of claim, it may have additional remedies and/or damages that could still be recovered in the adversary proceeding.

Memorandum Decision at 9.

The Court's decision was specifically limited to the claims or damages included in the April 22, 2004 Proof of Claim. The April 22, 2004 Proof of Claim did not include or refer to any damages for diversion of customers in violation of the State Court March 15, 2002 Order. Such damages were therefore not included in the compromise.

The Court also disagrees that the Plaintiff is not entitled to any further judgments because it has already been adequately compensated. It is irrelevant that the Plaintiff's proven damages are less than the amounts sought in the April 22, 2004 Proof of Claim. As stated above, the damages at issue were not included in the original proof of claim and were recognized as an additional basis for relief in this adversary proceeding by the Court in its April 24, 2007 Decision and Order.

Not in its original briefing, at the hearing, or in supplemental briefing, have the Defendants raised any defenses to the claims that the proposed judgments are nondischargeable under 11 U.S.C. § 523(a)(4), (6) or (7). Although the Court is troubled by the fact that the Defendants failed to brief these issues, the Court recognizes that this does not automatically entitle the Plaintiff to the relief sought. Even when the non-moving party fails to oppose the requested relief, the burden remains with the moving party on summary judgment to prove that it is entitled to the relief requested. Borough v. Rogstad (In re Rogstad), 126 F.3d 1224, 1227 (9th Cir. 1997).

**A.     11 U.S.C. § 523(a)(4)**

The Plaintiff argues that its claim for diversion of business is nondischargeable under 11 U.S.C. § 523(a)(4) as defalcation by a corporate fiduciary. The State Court found in Findings of Fact 73 that "Ms. Blades and Mr. DeMaskey conspired at a time when Mr.

DeMaskey was an officer and director of Wholesale Information Network, Inc., to divert the business of AAIM and E-Check from Wholesale Information Network, Inc., to Ms. Blades."

Creditors alleging nondischargeability under 11 U.S.C. § 523 have the burden of proof of each element by preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991). 11 U.S.C. § 523(a)(4) excepts from discharge any debt resulting from fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The broad general definition of a fiduciary–a relationship involving confidence, trust, and good faith-does not apply in the dischargeability context, thereby excluding ordinary commercial relationships from the reach of 11 U.S.C. § 523(a)(4). Lewis v. Short (In re Short), 818 F.2d 693, 695 (9th Cir. 1987). Implied or constructive trusts and trusts ex malefico also do not create the fiduciary relationship required by 11 U.S.C. § 523(a)(4). Short, 818 F.2d at 695.

The determination of whether an individual is a "fiduciary" under 11 U.S.C. § 523(a)(4) is a question of federal law. See Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003). The fact that a state court found that a defendant breached his "common law fiduciary duty of loyalty" is not conclusive. In Ninth Circuit dischargeability cases, the term fiduciary is given a very narrow definition and must be one arising from an express or technical trust that was imposed before the wrongdoing that caused the debt. Scott v. Lewis (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996). "The broad, general definition of 'fiduciary' is inapplicable in the dischargeability context." Lewis, 97 F.3d at 1185.

It is undisputed that an express trust did not exist between the Plaintiff and DeMaskey. In support of its argument, the Plaintiff cites to several Washington cases holding that corporate officers are fiduciaries of the corporation. See State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co., 64 Wn.2d 375, 381 (1964); Interlake Porsche & Audi v. Bucholz, 45 Wn.

App. 502, 508 (1986). However, in <u>Alexander & Alexander of Washington, Inc. v. Hultquist (In re Hultquist)</u>, 101 B.R. 180 (9th Cir. BAP 1989), the Ninth Circuit Bankruptcy Appellate Panel (BAP) specifically held that under Washington State law, a corporate officer is not a fiduciary for purposes of 11 U.S.C. § 523(a)(4). <u>Hultquist</u>, 101 B.R. at 185. The BAP held that "although the debtor may have owed a general fiduciary duty as a corporate officer under state case law, *no preexisting or statutorily created trust* existed at the time of the alleged wrongdoing." <u>Hultquist</u>, 101 B.R. at 185. Interpreting other state law, the same conclusion has been reached by other courts in the Ninth Circuit. <u>See</u> <u>Cantrell</u>, 329 F.3d at 1127 (holding that a corporate officer is not a fiduciary within the meaning of the discharge exception for fiduciary fraud under California law); <u>see also</u> <u>Streibick v. Murrell (In re Murrell)</u>, 2004 WL 1895200, *7 (Bankr. D. Idaho Aug. 12, 2004) (holding that corporate officers are not fiduciaries for purposes of 11 U.S.C. § 523(a)(4) under Idaho law).

Based on the BAP decision in <u>Hultquist</u>, the Plaintiff has failed to establish that DeMaskey committed defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4).

**B.     11 U.S.C. § 523(a)(7)**

In Findings of Fact 25, the State Court found that on March 15, 2002, it entered an order, which provides in paragraph seven: "Both shareholders are enjoined from taking any action to divert business or clients or customers from Wholesale Information Network, Inc., or to take any action in competition, present or future, with Whole Information Network, Inc."

In Conclusions of Law 7, the State Court concluded that DeMaskey breached the State Court's March 15, 2002 Order, by diverting business from Wholesale Information Network,

Inc. The State Court concluded that the Plaintiff was entitled to a judgment against DeMaskey in the amount of $33,245.73.

11 U.S.C. § 523(a)(7) provides that a debt is nondischargeable to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss.

"A debt is nondischargeable under § 523(a)(7) if (1) it is a fine, penalty, or forfeiture; (2) is payable to and for the benefit of a governmental unit; and (3) is not compensation for the government's actual pecuniary loss." Arizona v. Ott (In re Ott), 218 B.R. 118, 121 (Bankr. W.D. Wash. 1998).

In this case, the Plaintiff relies on In re Hercules Enters, Inc., 387 F.3d 1024 (9th Cir. 2004), and a case cited therein, PRP Wine Int'l, Inc. v. Allison (In re Allison), 176 B.R. 60 (Bankr. S.D. Fla. 1994). In Hercules, the Ninth Circuit Court of Appeals (Ninth Circuit) stated in dicta that under 11 U.S.C. § 523(a)(7), civil contempt sanctions are generally nondischargeable where they are imposed to uphold the dignity and authority of the court. Hercules, 387 F.3d at 1029. The Ninth Circuit also cited to In re Allison. In Allison, the bankruptcy court took the position that a fine or penalty need not be payable to a governmental entity in order to be for the benefit of a governmental agency. "In the case of contempt judgments, it is enough that the fine or penalty, although made payable to a party, be awarded to vindicate the dignity and authority of the court." Allison, 176 B.R. at 64.

The Ninth Circuit's statements in Hercules are not determinative on the issue before this Court. The issue in Hercules was whether the bankruptcy court judge properly imposed a monetary sanction on a nondebtor and whether it could further rule that the debt would be nondischargeable in any personal bankruptcy that the individual subsequently filed. The Ninth

Circuit reversed that portion of the bankruptcy court's order declaring the debt non-dischargeable in any subsequent bankruptcy filed, as a bankruptcy court judge may only determine the dischargeability of debts owed by debtors in a pending case. Hercules, 387 F.3d at 1029. Therefore, the statements as to the ability to discharge civil contempt sanctions under 11 U.S.C. § 523(a)(7) were dicta. As such, they are not binding on this Court.

Although the Allison case is more on point, it is a Florida bankruptcy court decision and also not binding on this Court. This Court disagrees with the conclusion of Allison and finds the analysis and conclusion reached by the Sixth Circuit Court of Appeals (Sixth Circuit) in Hughes v. Sanders (In re Sanders), 469 F.3d 475 (6th Cir. 2006), cert. denied, 127 S. Ct. 2051 (2007), to be better reasoned. The Sixth Circuit in Hughes disagreed with and distinguished those cases that have held that a debt need not be payable to a government unit to be nondischargeable under 11 U.S.C. § 523(a)(7), so long as they are imposed to uphold the dignity of the court. Rather, the Sixth Circuit relied on the plain language of the statute to hold that a penalty must be payable to and for the benefit of a governmental unit. Hughes, 469 F.3d at 479. The Sixth Circuit further found that the debt did not meet the requirements of 11 U.S.C. § 523(a)(7) as it was "compensation for actual pecuniary loss." The debt in that case was an amount calculated to compensate the creditor for malpractice damages, costs and fees. The fact that the judgment was entered as part of a sanction for the debtor's conduct did not change its compensatory character. Hughes, 469 F.3d at 479.

The Court recognizes that there is a conflict between the bankruptcy courts as to whether a penalty need actually be payable to a governmental unit to be nondischargeable under 11 U.S.C. § 523(a)(7). However, Hughes is a decision of a circuit court and this Court finds its reasoning to be the most persuasive and a better reasoned interpretation of 11

U.S.C. § 523(a)(7). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." United States v. Ron Pair Enters., 489 U.S. 235, 240-41 (1989). The Ninth Circuit recently reaffirmed the importance of upholding the plain meaning of a statute in In re Kagenveama, 2008 WL 2485570 (9th Circuit June 23, 2008). The Ninth Circuit reiterated that "[w]here statutory language is plain, 'the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" Kagenveama, 2008 WL 2485570 at *2 (quoting Lamie v. United States Tr., 540 U.S. 526, 534 (2004)). Accordingly, this Court concludes that in order for a debt to be nondischargeable under 11 U.S.C. § 523(a)(7), as required by the plain language of the statute, it must be payable to or for the benefit of a governmental unit.

In the case before the Court, the debt is not payable to or for the benefit of a governmental unit, it is payable to the Plaintiff. Even if it did satisfy this requirement, it is also compensation for actual pecuniary loss. The State Court computed the contempt damages based on the lost income resulting from DeMaskey's diversion of clients. The Plaintiff has failed to demonstrate that this debt is nondischargeable under 11 U.S.C. § 523(a)(7).

**C.    11 U.S.C. § 523(a)(6)**

11 U.S.C. § 523(a)(6) excepts from discharge any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. The willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct. Carrillo v. Su (In re Su), 290 F.3d 1140 (9th Cir. 2002). The maliciousness requirement is separate from the willful requirement. The test for maliciousness is (1) a wrongful act, (2) done intentionally,

(3) which necessarily causes injury, and (4) is done without just cause and excuse. Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001).

The Plaintiff cites to Allison, in which the bankruptcy court held that a debt arising from a state court contempt judgment was nondischargeable under 11 U.S.C. § 523(a)(6). The court held that "[f]ailure to comply with court directives contained in an injunction order satisfies the definition of 'willful and malicious' within 11 U.S.C. § 523(a)(6)." Allison, 176 B.R. at 64. The Plaintiff also cites to Int'l Brotherhood of Elec. Workers Local 520 v. Williams (In re Williams), 337 F.3d 504, 512 (5th Cir. 2003), in which the Fifth Circuit Court of Appeals concluded that the bankruptcy court properly found that the violation of an agreed judgment resulted in a willful and malicious injury.

The issue in the instant case is whether the Findings of Fact and Conclusions of Law of the State Court regarding violation of the March 15, 2002 Order are sufficient to conclude that DeMaskey's actions were willful and malicious, and therefore nondischargeable under 11 U.S.C. § 523(a)(6).

Applying the maliciousness requirement, the Findings of Fact and Conclusions of Law establish that DeMaskey's violation of the March 15, 2002 Order was (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) done without just cause and excuse. DeMaskey was ordered by the State Court's March 15, 2002 Order, not to divert business or clients or customers from the Plaintiff. DeMaskey nonetheless "conspired . . . to divert the business of AAIM and E-Check from Wholesale Information Network, Inc., to Ms. Blades." This resulted in a loss of revenue to the Plaintiff of $33,245.73. The State Court made no finding of just cause or excuse for the violation of its order.

Applying the willful requirement, the issue is whether DeMaskey had a subjective motive to inflict injury or that he believed that injury was substantially certain to result from his violation of the State Court Order. On March 15, 2002, DeMaskey was ordered to take no action to divert business or clients or customers from the Plaintiff. Through contacts of DeMaskey, Blades purchased Franchise Profiles on March 1, 2004. Prior to that time, AAIM and E-Check were customers of the Plaintiff. Through the assistance of DeMaskey, Franchise Profiles acquired AAIM and E-Check as customers in March, 2004 and April, 2004, respectively. Blades and DeMaskey conspired to divert the business of AAIM and E-Check from the Plaintiff to Franchise Profiles. Had AAIM and E-Check remained with the Plaintiff, it would have received revenues of $33,245.73. These findings support the conclusion that DeMaskey believed that injury was substantially certain to result from his violation of the March 15, 2002 Order. The Plaintiff has established that the debt is nondischargeable under 11 U.S.C. § 523(a)(6).

In regards to the $31,923.08 in attorney fees, counsel for DeMaskey agreed at the June 10, 2008 hearing that if the Court determines that the underlying debt is nondischargeable, these fees are likewise not subject to discharge. See Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co., 127 S. Ct. 1199, 1208 (2007). The Court agrees.

DATED: August 1, 2008

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge